THE PHŒNIX LEAD MINING & SMELTING COMPANY vs. SYDNOR and others.

BETTERMENT ACT. (*1) Applicable to recovery of undivided interest. (2) Remedy by independent action, under sec. 33. (3) Proceeding in ejectment suit must be commenced before judgment.*

1. Secs. 30–33, ch. 141, R. S., authorizing defendants in ejectment, in certain cases, to recover the value of their permanent improvements on the land, apply to an action in which the plaintiff recovers an undivided interest as *cotenant* of the defendant; and in such cases the court may apportion the expense of the improvements according to the respective interests of the parties.

2. Where an ejectment defendant has a valid claim for *improvements under sec. 33 of said chapter*, his lien for their value may be enforced in an independent action, so long as the statute of limitations has not run against it, and the property is owned by the ejectment plaintiff.

3. But where it is sought to enforce such a claim under said section 33, *in the ejectment suit*, the proceedings for that purpose must be taken after verdict and *before judgment*, in analogy to the rule in cases under secs. 30–32, as established in *Scott v. Reese*, 38 Wis., 636.

APPEAL from the Circuit Court for *La Fayette* County.

In January, 1867, *Sydnor and others* (the defendants in this proceeding) commenced an action of ejectment in said circuit court against the *Phœnix Lead Mining & Smelting Company* and another, to recover possession of an undivided one-sixth of certain land; the title to the remaining undivided five-sixths of the land being admitted to be in the defendants to that action. The action was tried at the June term, 1870; the plaintiffs therein had a verdict; a motion made for a new trial on the ground of alleged errors, was denied; and a judgment for the plaintiffs was subsequently entered as of the said term.

An appeal was taken to this court, where the judgment was affirmed in December, 1871. 29 Wis., 226. After the cause had been remitted, viz., on the 1st of July, 1872, the circuit court, on motion of the defendants therein, made an order vacating its former judgment, and granting a new trial, which defendants claimed as of right under the statute; but the order was reversed by this court on appeal. 32 Wis., 406. The cause was again remitted to the circuit court in May, 1873; and at the following June term the *Phœnix Lead Mining & Smelting Company* moved for a new trial on the ground of newly discovered evidence, which motion was denied on the 12th of July, 1873.

The defendants in the ejectment suit then filed a claim for valuable and permanent improvements made by the defendant company upon the land in controversy, and demanded that an

issue be made up for the purpose of ascertaining the value of such improvements.

It was stated in this claim that the defendant company claimed title to said land under a warranty deed dated November 24, 1864, from Caroline F. Strong and her husband, Moses M. Strong; that said Caroline F. Strong claimed title under a deed to her dated September 15, 1862, from William T. Henry and wife; that said Henry claimed title under a deed to him dated September 12, 1862, from the sheriff of La Fayette county, upon an execution issued out of said court against the property of the Western Wisconsin Mining Company; that said last mentioned company claimed title under a warranty deed to it, dated June 19, 1854, from Moses M. Strong and wife, and also under a deed executed on the 5th of March, 1856, to said Strong by Henry H. Ensign, clerk of the board of supervisors of La Fayette county, said Ensign then and there being an officer authorized by the laws of this state to execute the same, on account of certain sales of said land in the years 1847-8-9 and 1850, for the payment of taxes, which title, so conveyed by the deed of said Ensign, said Western Wisconsin Mining Company claimed to have enured to it. It was further stated that the ejectment plaintiffs claimed title from another source than that above described.

A copy of this claim was served upon the plaintiffs in ejectment, with an order requiring them to show cause why such issue should not be made up. The plaintiffs in ejectment, claiming to appear specially for that purpose only, alleged for cause, *inter alia:* 1. That the court had no longer jurisdiction of the subject matter or of the persons of the plaintiffs, to try the matters set forth in said order. 2. That defendants were at the time of making the alleged improvements, and still continued to be, cotenants with the plaintiffs of the premises, whereof an undivided one-sixth had been recovered by said plaintiffs; and that it did not appear, and was not true, that during the time in which said improvements were made

the defendants were in possession of the property in dispute *adversely* to the plaintiffs, or that they were in possession at all. 3. That said claim did not show, and it was not true, that at the time said improvements were made, the defendants, or those under whom they claim, were in possession *claiming title under any tax deed* or other instrument mentioned in sec. 30, ch. 141, R. S. Afterwards, on September 24, 1873, the court made an order directing the impaneling of a jury at its next term to try the issue between the said *Phœnix Lead Mining & Smelting Company* as plaintiff and said *Sydnor and others* as defendants, as to the making of the alleged improvements in good faith upon the said land by said company or its grantors, and as to the value of such improvements. By subsequent orders, the parties to such issue were twice permitted to file amended pleadings; and the second amended complaint stated, *inter alia*, that the *Lead Mining & Smelting Company* claimed under the above mentioned warranty deed of November 24, 1864, from Caroline F. Strong and her husband, Moses M. Strong, and that the "source and chain of the title of said Caroline F. Strong" to the undivided interest in controversy was, (1) A deed of said undivided interest from one Hollister to Moses M. Strong, dated April 25, 1854, executed and received in good faith, for full value. It is alleged further that Moses M. Strong, on said 25th of April, 1854, was seized of the undisputed title in fee of the remaining undivided five-sixths of the land described. (2) A deed from Moses M. Strong and wife to the Western Wisconsin Mining Company, dated June 19, 1854, of the whole of said land. (3) A deed, dated September 12, 1862, conveying to W. T. Henry the title of the Western Wisconsin Mining Company to the whole of said land, executed by the sheriff of La Fayette county in pursuance of a sale upon execution against the property of said mining company. The defendants demurred to this complaint, on the grounds, among oth-

ers, that the court had no jurisdiction of the persons of these defendants, or either of them, or of the subject of the action; and that the complaint did not state a cause of action. From an order overruling their demurrer, the defendants in this proceeding appealed.

The cause was first argued at the August term, 1875.

*S. U. Pinney*, for the appellant, contended, 1. That when the claim for improvements was filed, the court had lost all power over the judgment, to change it in any respect, or to recall the parties for the purpose of further litigation in that action. *Thomas v. Rewey*, 36 Wis., 328. 2. That the effect of the decision above cited could not be evaded by urging the claim as one made under sec. 33, ch. 141, R. S., instead of the three preceding sections; that the original claim was obviously made under secs. 30–32, and the second amended claim, proposed after the decision of *Thomas v. Rewey*, was a lame attempt to bring the case under sec. 33; that the order directing the issue to be made up was made under sec. 31, and had never been amended or changed; and that this order gave to the proceeding its whole vitality, and determined its character. 3. That the remedy provided by sec. 33 is entirely inapplicable to the case of an ejectment defendant claiming under deeds of such a character that they entitle him to the relief provided in secs. 30–32. 4. That it is plain from the record that the *Phœnix Lead Mining & Smelting Company* claims under a tax deed, and also under a sheriff's deed on execution sale, and that the latter, especially, is an essential link in its chain of title, without which it has not color of title; and that its remedy, therefore, was under secs. 30–32. 5. That even if the company had a remedy under sec. 33, the demurrer should have been sustained, because, (1) If that section contemplates a proceeding in the ejectment suit, such a proceeding is *too late* after the court has lost control of the judgment in that suit. The reasoning of *Thomas v. Rewey* is entirely applicable to such a proceeding. (2) The remedy given by sec. 33 is

really a *separate action.* The provisions of that section are too meager to enable the court to give a remedy supplemental to verdict in the same action. 6. That when the order of the circuit court of July 1, 1872, vacating the judgment in favor of the ejectment plaintiffs, was reversed by this court, and the remittitur was duly filed, the effect of that order totally ceased, and the judgment of the circuit court became operative. At all events, if any further order of the circuit court is technically necessary, it is a mere formality, a matter of course, and can be entered at any time in the court below, and its absence will be disregarded by this court. *Chautauqua County Bank v. White,* 23 N. Y., 347; 2 Whit. Pr., 828; 2 Till. & Shearm. Pr., 964; 2 Wait's Pr., 288.

*M. M. Strong,* for the respondent, argued, 1. That it had a right to a judgment for the value of the improvements, under sec. 33, ch. 141, R. S. (1) The court will give to sec. 30 its most obvious construction; and under such a construction "a claim of title under or by virtue of a deed from an officer" will be held to mean that the deed is from the officer *directly* to the party claiming the title, and not merely to some party through whom the title is remotely derived. (2) Secs. 30–32 relate only to persons claiming under *tax deeds* executed to them, or at most to persons claiming titles originating in tax deeds. This restriction harmonizes with the language of those sections, is necessary to give due effect to sec. 33, and is clearly indicated in the decision in *Oberich v. Gilman,* 31 Wis., 495. This court has already decided (29 Wis., 226) that the tax deed from Ensign did not enure to the respondent's benefit, and it cannot claim to have had possession under that deed; and the second amended complaint, to which the demurrer was made, contains no claim on account of that deed. 2. That even if the respondent's remedy was under secs. 30–32, the claim was not made too late. When an appeal was taken from the judgment of the circuit court, that judgment ceased to be effective, and the circuit court had no

further jurisdiction of the case until it was remitted from the supreme court, upon which it devolved upon the circuit court to enter final judgment in accordance with the order of affirmance. Laws of 1860, ch. 264, ch. 7 (Tay. Stats., 1632–3); Powell on Appellate Proceedings, 371; *Long v. Hitchcock*, 3 Ohio, 274; *Bassett v. Daniels*, 10 Ohio St., 617; *Legg v. Overbagh*, 4 Wend., 188; *Delaplaine v. Bergen*, 7 Hill, 591; *Miner v. Medbury*, 7 Wis., 100; *Carney v. Emmons*, 9 id., 114; *Hopkins v. Gilman*, 23 id., 512. Before any steps had been taken to have such a final judgment entered, the circuit court granted a new trial as of right under the statute; and on appeal this order was reversed, and the cause "remanded for further proceedings" (32 Wis., 411). How could all this be, if the old judgment of 1870 was final and still in force? The second remittitur was filed May 22, 1873, and on June 13th the attorneys of the ejectment plaintiffs served a notice that they would " apply to the court for such judgment or order as the plaintiffs might be entitled to in pursuance " of such remittitur. Action upon this motion was prevented, first, by respondent's motion for a new trial on the ground of newly discovered evidence; and afterwards by respondent's interposition of its claim for improvements. At that time no final judgment had been entered, the court had full control of the case, and all the parties were before it. 3. That when the claim is under sec. 33, there is no statutory limit of the time for making it. If it is not made until after the court has so far lost control of the cause that it cannot summon a jury to assess the value of the improvements, the ejectment defendant would still have a lien on the real estate for the value of his improvements, but it would probably be necessary to resort to an original proceeding to enforce such lien. But this case is free from that embarrassment.

By order of the court, the cause was reärgued at the January term, 1876, upon the question whether secs. 30–33, ch. 141, R. S., apply to *undivided interests* in land.

*J. C. Gregory*, for appellants:

The sections of the statute in question establish rights which did not exist at common law or in equity and give a peculiar remedy (which is the only one) for enforcing such rights. *Oberich v. Gilman*, 31 Wis., 497; *Huebschmann v. McHenry*, 29 id., 655; *Claussen v. Rayburn*, 14 Iowa, 136. This remedy, though supplemental to the action of ejectment, forms no part of the remedy by ejectment. And the right given is not an outgrowth of the action of ejectment, so as necessarily to exist whenever that form of action is maintainable. There is no analogy between the cases of two defendants against whom judgment in ejectment has been rendered, and both of whom have made valuable improvements in good faith, but against one of whom the recovery is of the whole estate, while against the other it is of an undivided interest only. In the former case such improvements would be absolutely lost to the defendant. In the latter case he would only be required to share the possession of the improved estate with the plaintiff; and in case of partition, the improved portion of the estate would be assigned to him at a valuation independent of such improvements, or he would be compensated in some other equitable manner. *Reed v. Jones*, 8 Wis., 421; *Warner v. Fountain*, 28 id., 414; *Dech's Appeal*, 57 Pa. St., 467. The statute was intended, therefore, to meet cases of the former kind, and the words "recover" and "recovery," in secs. 30 and 33, should be construed to mean a *recovery in fact*, such as would divest the defendant of the possession. 2. If these sections apply between tenants in common, the effect is to reward the defendant for his *wrongful* act in *ousting* the plaintiff from the common estate; and this fact alone should dictate a different construction. One tenant in common may take possession of the entire estate, claiming the whole, but giving no such notice, actual or implied, to his cotenant, as will enable the latter to maintain ejectment (*Sydnor v. Palmer*, 29 Wis., 254); and having made improvements under

these circumstances, the tenant in possession has but to commit the wrongful act of ousting his cotenant by giving notice of the hostile character of his claim, or by acts tantamount to notice. The cotenant out of possession is then driven to his action of ejectment, and the tenant in possession is enabled, as the direct fruit of his wrongful act, to charge the value of his improvements upon the estate of his contenant. 3. As between tenants in common, the verdict in ejectment simply establishes the fact that at the commencement of the action the defendant was in the possession of the estate, and had ousted the plaintiff therefrom. Sec. 10, ch. 141, R. S. But to entitle a defendant in ejectment to compensation for improvements, his possession *at the time the improvements were made* must have been under claim of title adverse to the plaintiff. *Keas v. Burns*, 23 Iowa, 235; *Bent v. Weeks*, 46 Mc., 524; *Peabody v. Hewett*, 52 id., 33; *Pratt v. Churchill*, 42 id., 471. In a case like the present, the character of the defendant's possession when the improvements were made, is not established by the verdict, and must be tried in this proceeding before he can recover. But these sections contemplate the trial of no such issue in this supplemental proceeding, and are therefore inapplicable in such cases.

*M. M. Strong*, for the respondent:

1. An actual ouster, by the ejectment defendant, of the plaintiff, who claims title to an undivided interest in the land, is a denial and repudiation by such defendant, of the plaintiff's claim of a tenancy in common; and all the rights, liabilities and remedies of the parties in reference to each other are the same as they would be if there were no claim of tenancy in common. 2. The pleadings and verdict in this case show beyond question that there was no tenancy in common of the undivided one-sixth interest claimed and recovered by the plaintiffs. The fact that the defendant was the undisputed owner in fee of the other five sixths of the land cannot affect the question of its right to the value of its improvements.

That question must be determined in the same manner as it would have to be if the parties to the litigation had no interest in the other five-sixths. 3. It is clearly within the power of the legislature to confer the right in question *in all cases* where the defendant in ejectment, who has made valuable and permanent improvements, is defeated in the action; and in determining, in any given case, whether the right has been conferred, the court has only to determine whether the case is *within the general designation of cases*, and meets the statutory conditions. Secs. 30–32 confer the right in question upon ". any person," without restriction or qualification, upon certain conditions; and " the word ' person ' may extend and be applied to bodies politic and corporate as well as individuals." R. S., ch. 5, sec. 1, subd. 12. The conditions prescribed by said sections are . all alleged to exist in this case. Sec. 33 confers the right of recovering the value of improvements " in . all cases," upon certain conditions, which are alleged in this case. Applying the statutory rule which requires that the words of these sections " shall be construed and understood according to the common and approved usage of the language " (R. S., ch. 5, sec. 1, subd. 1), it seems to follow conclusively that they include a claim for improvements made upon land for an *undivided interest* in which a recovery has been had. And see *Davis v. Louk*, 30 Wis., 308:

COLE, J. The first question to be considered is, Do secs. 30, 31, 32 and 33, ch. 141, R. S., apply to actions brought to recover an undivided interest in land, so as to give a tenant in common, who has been defeated in an action to recover possession of such undivided interest, a claim against his cotenant for his improvements in whole or in part ? The question is fundamental in this case, and was not discussed upon the first argument. In our examination of the cause, we had some doubt whether the statute did not restrict the right to cases where there was a recovery of the possession of

the whole estate, and therefore a reärgument of the question was ordered, whether it applied to a case where there was a recovery of an undivided interest only. The plain intent of the statute is to secure to a *bona fide* possessor of land, on a recovery against him in an action of ejectment, compensation for his improvements; but the statute needs further legislation to carry out in all cases the equitable principles upon which it is founded. Cases do and will often arise, where it would be difficult and unjust to apply its provisions; as where the plaintiff in ejectment claims and recovers an estate less than the fee, as an estate in dower, or for life, or for a term of years. In such cases it is manifestly unjust to impose upon the plaintiff the entire burden of the improvements; but the statute makes no provision for bringing in other parties so as to enable a full and just adjustment of the expense of the improvements to be made between all parties interested in the estate and benefited by them. As it now stands, the statute is defective and urgently needs amendment. And in the case before us, while we are inclined to hold that the statute applies to an action to recover an undivided interest in the land, still, the power of the court to apportion the expense of the improvements between the tenants in common according to their respective interests, is one arising by implication rather than conferred by express grant, as it should be. But while the matter may not be beyond the reach of the court under the statute, yet it must be confessed that the way is not very clearly pointed out or provided, as it easily might be by the legislature, for adjusting the rights and equities of the parties, where one tenant in common has in good faith made beneficial improvements on the estate.

The learned counsel for the plaintiffs in ejectment claims that the reason and policy of the statute fail in the case of a recovery of an undivided interest, because, he says, the defendant surrenders nothing, but only shares the possession of the improved estate with his cotenant, and, in an action for

a partition, can secure compensation for improvements made by him. But a court of law, proceeding under the partition statute, is inadequate to make a full and just adjustment of the expenses of the improvements; though it would be otherwise in a court of equity. See Story's Eq. Jur., §§ 655 et seq. Still, the question is, Does the betterment statute give one tenant in common, after a recovery against him by his cotenant of an undivided interest, the right to compensation for valuable improvements made in good faith upon the common estate? We have already indicated the opinion that it did, and that the court, under the sections first referred to, had power to apportion the expense of the improvements according to the interest of the parties. There is, doubtless, an inherent difficulty, or rather inaccuracy, in saying, in such a case, that the improvements have been made on the lands recovered, because, in fact, only an undivided interest is recovered in the common estate upon which the improvements are made. But the intent of the statute, if manifest, must prevail, however inaccurately it may be expressed in the language used. Under sections 15 and 16, where the plaintiff in ejectment recovers any estate, share or interest in land, the defendant has the right to set off permanent improvements made on the premises against the plaintiff's damages for the unlawful withholding, including the mesne profits; and these provisions were held in *Davis v. Louk*, 30 Wis., 308, to apply to a case where there was a recovery of an undivided interest by one tenant in common against his cotenant. There the value of the improvements was apportioned according to the rights and interests of the respective parties, and this court thought the statute sanctioned such an equitable adjustment. That case, as far it goes, is strongly in favor of a construction of secs. 30, 31, 32 and 33, which gives a tenant in common his claim for improvements against his cotenant. And such construction derives support from the last clause of sec. 31, which provides that if the jury "find

that the plaintiff is entitled to recover any sum for or on account of such improvements, judgment shall be rendered for such sum as they shall so assess and award." Therefore, taking the various sections of ch. 141 together, considering the object and spirit of the provisions relating to the claim of improvements made by the party in possession "in good faith and in the mistaken belief that he had acquired a title from the rightful owner" (2 Kent, 334), we feel warranted in holding that they apply to actions for an undivided interest in land. See, also, *Blodgett v. Hitt*, 29 Wis., 170.

In this case the counsel do not agree as to the proper construction and effect to be given the claim for improvements, and as to whether it is made under secs. 30, 31 and 32, or under sec. 33. They substantially agree, however, in the position that the proceeding taken to enforce the claim is in the ejectment suit, and is not an independent action instituted for that purpose. If the claim is made under secs. 30, 31 and 32, the practice to be adopted, as well as the time for making the claim, are fully pointed out in *Thomas v. Rewey*, 36 Wis., 328, and *Scott v Reese*, 38 id., 636. In the former case the chief justice says: "Upon careful consideration of all the provisions of the sections in question, we hold that the claim of the defendant in ejectment must be made either before judgment upon the verdict, or at latest within the term at which the judgment is rendered, and while the judgment remains under the control of the court. We do not pass, in this case, upon the question, whether the claim must not be made before judgment. But we hold that, when judgment has been rendered on the verdict, and the term of the court has ended, it is too late for the defendant to recall the cause and the plaintiff to the court, by this supplemental proceeding; and that what is done after the term of judgment cannot be considered as done forthwith after verdict." In *Scott v. Reese*, it was held "that the claim and the issue upon it must not only be made,

but that the issue must be tried, before any judgment should be rendered in the ejectment." p. 639.

If it is sought to enforce the claim in the ejectment suit under section 33, then, in analogy to the rule laid down in *Thomas v. Rewey* and *Scott v. Reese*, the proceeding for that purpose must be taken subsequent to the verdict and before judgment. Sec. 33 also provides that in all cases where a recovery is had of lands on which the party in possession, or those under whom he claims, holding adversely by color of title asserted in good faith, founded on descent or any written instrument, shall have made valuable improvements, such party shall have a lien on such real estate for the value of such improvements. This lien may be enforced in an independent action, so long as the property is owned by the plaintiff in ejectment and the statute of limitations has not run upon it. It is analogous to a vendor's lien for purchase money, and liable to be cut off by a sale of the property, for a valuable consideration, to a purchaser without notice of it. The same section further provides that the lien may be enforced in the ejectment suit itself by a supplemental proceeding, as in the case where recovery is had against a party claiming title under a tax deed. Such was the proceeding confessedly taken here, being a proceeding in the action of ejectment; and we must therefore hold, in accordance with the rule laid down in *Thomas v. Rewey* and *Scott v. Reese*, that it was taken too late. It is true, the section is silent as to when the jury shall be summoned to assess and ascertain the value of the improvements; but it is clearly implied that it must be done while the court has control of the ejectment suit. It is said the demurrer should be considered as to the whole complaint as amended, and that it appears that no final judgment has yet been rendered in the ejectment. This position is clearly not supported by the record. It does appear beyond all controversy that final judgment was rendered in the action

of ejectment long before this supplemental proceeding was instituted. Such being the case, the court had lost jurisdiction of the persons of the plaintiffs in the original suit, as well as all jurisdiction of the action of ejectment, and had no power to entertain it for any purpose. These remarks dispose of the case.

It follows from these views that the order of the circuit court overruling the demurrer must be reversed, and the cause must be remanded for further proceedings in accordance with this decision.

*By the Court.* — So ordered.