LOMBARD vs. ANTIOCH COLLEGE.

*April 12 — May 15, 1884.*

CONSTITUTIONAL LAW: EJECTMENT. *(1) Class legislation: Marathon county lands: Payment of taxes as condition of recovery: Interest. (2) Limitation of actions.*

1. Ch. 278, Laws of 1883, provided that no action should be commenced by the original owner to recover any lands theretofore conveyed by any county to the state and sold by the state to private parties, until all taxes levied and assessed thereon after the sale by the state, together with charges for collection and interest at twenty-five per cent. per annum, and all delinquent taxes remaining unpaid when the lands were conveyed to the state, with like interest, should be paid into the county treasury to abide the event of the action; and that in pending actions the court might order such payment and in default thereof dismiss the action. *Held:*

  (1) The act is not invalid as class legislation, although the lands affected by it may be all in one particular locality.

  (2) So far as the act merely requires the *deposit* of taxes which, under previous laws, the plaintiff would have been compelled to pay before he could recover the lands, it affects merely the remedy, not a substantial right, and is valid.

  (3) But in so far as it requires the payment of interest at the rate of twenty-five per cent. per annum, it imposes a penalty upon the owner, retrospectively, and is void. It is valid, however, as to the taxes and interest at seven per cent.

2. The statute (sec. 1182, R. S.) which prohibits the issuing of a tax deed upon a certificate of sale for taxes, or the maintenance of any action thereon, after six years from the day of sale in certain cases, and after fifteen years in all cases, does not relieve the

original owner from the payment of the taxes upon which such tax certificates were issued, if they are owned or held by the claimant under a tax deed or by any person under whom he claims, before he can have execution upon a recovery in ejectment, under sec. 3096, R. S.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice TAYLOR, as a part of the opinion:

Ejectment to recover the possession of certain real estate situate in the county of Marathon. The defendant, in its answer, among other things, sets out the following facts:

"And now comes the defendant, by Silverthorn & Hurley, its attorneys, and, for answer or defense against the further maintenance or prosecution of this action, says that the said action was commenced on the 27th day of February, A. D. 1882, and that the several tracts of land described in the complaint were, on the 3d day of June, A. D. 1867, conveyed, or attempted to be conveyed, to the state of Wisconsin by Marathon county, in this state, by a deed of conveyance duly executed by the clerk of the board of supervisors of said county in its behalf, in pursuance of and in conformity with ch. 22 of the General Laws of 1867, entitled 'An act to authorize the county of Marathon to convey certain lands to the state in satisfaction of certain indebtedness,' which said deed was, on the 3d day of said month, delivered to and accepted by the said state; that afterwards, on the 20th day of May, A. D. 1871, the N. E. ¼ and the S. E. ¼ of the N. E. ¼ of section 29, township 27, range 2, east, were sold by the said state of Wisconsin to one J. D. Witter, and the patent of said land duly issued to him therefor, and that on the 10th day of July of the same year all the other lands described in the complaint were duly sold and patented by the said state to the said J. D. Witter, from whom, through sundry mesne conveyances, this defendant holds title to the lands described in the com-

plaint; that this action was commenced and is sought to be maintained to recover possession of the said lands on the ground that his tax deeds, under which the said Marathon county claims title to said lands, were void on their face, and that the state acquired no title through or under the same, and that the plaintiff claims title to the said lands, and right to recover possession thereof, through sundry mesne conveyances from some person who entered same lands from the United States in the year 1856, as the original owner; that taxes were duly assessed and duly levied against the said several tracts of land in the complaint mentioned from the date of the sale thereof by the said state, commencing with the May following said sale up to and including the taxes of 1882, as stated in Exhibit A, attached hereto, which taxes, together with the legal charges for assessing and collecting the same, were of the amount stated in said exhibit, and were duly paid to the proper officer by this defendant, and by the several persons through whom the defendant derives title, up to and including said J. D. Witter, which several sums so paid, with interest at the rate of twenty-five per cent. per annum from the 15th day of May in each and every year above mentioned, amount to the sum of $1,260.52.

"And that the taxes duly levied upon said land and returned delinquent and remaining unpaid when the same were so conveyed or attempted to be conveyed to the said state, were for the amounts stated in the said 'Exhibit' for and from the year 1861 to the year 1866, inclusive, which several sums, with like interest, amount to the sum of $486.37, and that the amounts of the taxes and legal charges upon said lands so levied, assessed, and paid since the date of the sale of said lands by the said state, or any part thereof, or the interest thereon, as aforesaid, or any part thereof, have not been paid into the county treasury of said Marathon county by or in behalf of the plaintiff in this

action, as required by ch. 278 of the General Laws of 1883, entitled 'An act relating to lands heretofore held and sold and conveyed by the state, to actions concerning the same, to taxation of the same, and payment of taxes and interest'; nor have the taxes levied upon said lands aforesaid, returned delinquent and remaining unpaid when said lands were so conveyed, or attempted to be conveyed, to the said state, together with interest as aforesaid, nor any part thereof, been paid into the said county treasury, as in said ch. 278 required.

"Wherefore, this defendant prays judgment whether the said plaintiff shall further maintain or prosecute his action until he shall comply with the provisions of said sec. 1 of said ch. 278, by payment into said county treasury of the taxes, charges, and interest, as provided therein; and it prays the court to enter an order requiring the said plaintiff, within a reasonable time, to be fixed therein, to comply with the provisions of said section by payment into said county treasury of said taxes, charges, and interest, as provided therein; and, in default of compliance therewith, demands judgment that this action be dismissed, and that the defendant recover its costs herein from said plaintiff, and have such other relief in the premises as equity may require."

Afterwards, and on the 20th of June, 1883, the defendant gave notice of motion as follows, omitting the title of the action: "You will please take notice that upon the first answer, and the accompanying affidavit or verification thereunto annexed, found between folios 1 and 14 of the defendant's answer heretofore served on you, the defendant will move this court, at a term of said court to be held . . . for the entry of an order by the court requiring the plaintiff in this action, within a reasonable time, to be fixed in said order, to comply with the provisions of sec. 1, ch. 278, of the General Laws of 1883, by payment of the taxes, charges, and interest, as provided therein, a statement

of which taxes and interest is set forth more at large in said answer, and Exhibit A attached thereto."

On the 29th of June, 1883, the motion of the defendant was denied by the circuit court. From the order denying such motion the defendant appeals to this court.

The printed case shows that the motion was based, not only upon the answer of the defendant above set forth, but upon the following stipulation:

"It is hereby stipulated and agreed by the parties hereto and their respective attorneys:

"1. That the clerk of the board of supervisors of Marathon county executed to the state of Wisconsin, on the 3d day of June, 1867, a quitclaim deed for 40,500 acres of land, in township 26, ranges 2 to 10, inclusive, and in township 27, ranges 2, 3, and 4, east, intending to comply with the condition and in the form required by ch. 22 of the Laws of 1867; and said deed, with all the outstanding tax certificates upon and against the tracts of land mentioned in said deed, and being the outstanding certificates on the tax sales for the years 1863, 1864, 1865, and 1866, were thereupon delivered to the secretary of state for the use and benefit of the state, and thereupon the state treasurer gave credit to said county for $20,271.34 of delinquent state tax due from said county to said state, and that Exhibit B, hereto attached, being a certified copy of said deed from said county to said state, omitting the description of all lands in said deed except the lands in controversy in this action, with statement of the date of its record *in extenso*, only may be received in evidence.

"2. That all tax deeds held by Marathon county at the date of the passage of said ch. 22, Laws of 1867, upon all the lands in said county, and upon all the lands mentioned in said deed from Marathon county to the said state, at the time of the passage of said ch. 22, and at the time of the execution and delivery of said deed to the said state, were

informal and void because of the omission of the state as grantor in said tax deeds, or for the omission of the words ' as the fact is,' and the said tax deeds so held for the lands in controversy in this case were recorded *in extenso* in Vol. P. of tax deeds, on the 1st day of May, 1866, in the office of register of deeds of Marathon county, Wisconsin, on pages 132, 133, and 134, but that said tax deeds were never indexed in any volume whatever till the 9th of May, 1881.'

" 3. That the list, being Exhibit A, attached to the answer, of the taxes paid by the defendant, and by those under whom it claims title, is to be received as correct, and that they were delinquent at the time the lands were conveyed to the said state as stated in said list, together with the interest as in said list stated, subject to the right of the plaintiff to show any errors or mistakes therein."

The provisions of ch. 278, Laws of 1883, upon which the defendant's motion was founded, are found in secs. 1 and 3 of said chapter, which read as follows:

" Section 1. No action shall be commenced, maintained, or prosecuted by or on behalf of the original owner, or any person claiming title through ' or under such owner, to recover possession of, or in any way involving the title to, any lands heretofore conveyed to the state of Wisconsin by any county in the state, or attempted to be so conveyed and sold by said state of Wisconsin to any private party or parties, until all taxes levied and assessed upon and against the same from the date of the sale thereof by the said state, together with all legal charges for assessing and collecting the same, and interest thereon at the rate of twenty-five (25) per centum per annum from the fifteenth day of May in each and every year during which the said lands were assessed, commencing with the May following the first assessment after such sale, shall have been paid into the county treasury of the county in which such lands shall lie; nor until all delinquent taxes levied upon and returned against said lands,

and remaining unpaid when the same were so conveyed, or attempted to be, to the state, together with the like interest thereon, shall have been paid into such county treasury; which moneys shall be retained in said county treasury to abide the event of such action, and shall be returned to the party paying or depositing the same if he shall fail to maintain such action. Otherwise, so much thereof as covers the delinquent taxes above mentioned, and interest thereon at the rate aforesaid, shall be retained by such county, and the remainder shall be paid over to the party or parties purchasing the same from the state, his or their legal representatives.

"Section 3. In all actions now pending, of the character referred to in section 1 of this act, the court shall enter an order requiring the plaintiff therein, within a reasonable time, to be fixed in the order, to comply with the provisions of said section by payment of the taxes, charges, and interest as provided therein, and, in default of compliance therewith, the court shall dismiss the action."

For the appellant there were briefs by *Silverthorn, Hurley & Ryan,* and oral argument by *Mr. Hurley.*

*Moses Hooper,* for the respondent, contended that ch. 278, Laws of 1883, was invalid: (1) It violates the general principle underlying all constitutions and statutes, that *all are equal before the law,* by applying a different rule to actions relating to forty thousand acres of land in Marathon county, from that applying to actions of the same nature, commenced under substantially the same circumstances, relating to other lands of like character. *Durkee v. Janesville,* 28 Wis., 464; *Hincks v. Milwaukee,* 46 id., 559; 1 Cooley's Bl. Comm., 43, note; 1 Lieber's Pol. Eth., 74; Cooley's Con. Lim., 212, 213, 440, 461, 490; *Holden v. James,* 11 Mass., 396, 405; Locke, Preface to Toleration; *State ex rel. v. Hammer,* 42 N. J. Law, 435; *Clark v. Mitchell,* 69 Mo., 627; *Burke v. Mechanics' Savings Bank,* 12 R. I., 513; *Calder v.*

*Bull*, 3 Dall., 387; *Fletcher v. Peck*, 6 Cranch, 143; Potter's Dwarris, 123; *C., W. & Z. R. R. Co. v. Commissioners*, 1 Ohio St., 86; *Pearson v. Portland*, 69 Me., 278; *Omnibus R. R. Co. v. Baldwin*, 57 Cal., 160; *Mitchell v. McCorkle*, 69 Ind., 184; *Wally's Heirs v. Kennedy*, 2 Yerg., 554; *Tate's Ex'rs v. Bell*, 4 id., 202; *Officer v. Young*, 5 id., 320; *Jones's Heirs v. Perry*, 10 id., 59; *Alter's Appeal*, 67 Pa. St., 341; *S. & N. Ala. R. R. Co. v. Morris*, 65 Ala., 193; *Dorsey v. Dorsey*, 37 Md., 64; *Lewis v. Webb*, 3 Me., 326, 336; *Simonds v. Simonds*, 103 Mass., 572; *Forster v. Forster*, 129 id., 559; *State v. Cal. M. Co.*, 15 Nev., 238, 251; *Teft v. Teft*, 3 Mich., 67; *Bagg's Appeal*, 43 Pa. St., 512; *Comm. v. Patton*, 88 id., 260; *State ex rel. v. Mitchell*, 31 Ohio St., 607; *State ex rel. v. The Judges*, 21 id., 11. (2) It violates sec. 1 of the XIVth amendment to the federal constitution, providing that no state shall deny to any person the equal protection of the laws. (3) It violates sec. 9, art. I of the state constitution providing that every one ought to obtain justice freely, and without being obliged to purchase it. *Weller v. St. Paul*, 5 Minn., 95; *Philleo v. Hiles*, 42 Wis., 527. (4) It attempts to create a debt where none existed. If this act is sustained the legislature should enact that, wherever any man has paid taxes on lands under the supposition that he owned them, he may recover the taxes so paid with interest at twenty-five per cent. from the true owner or his grantee. This act has not even the merit that it makes a legal obligation of a supposed moral obligation. It does not restrict the deposit to cases where the taxes were just or equitable, nor to cases where the taxes were paid by the claimants under the state patent. If the owner himself has paid the taxes he must pay them again; and in any case he must pay interest at twenty-five per cent. per annum. It is not in the power of the legislature thus to create a debt from one person to another without the consent of the party burdened. *Hampshire v. Franklin*, 16 Mass., 84; *Cornell v. Hichens*, 11 Wis.,

353; *State ex rel. Damman v. Commissioners*, 4 id., 418; *Coffin v. Rich*, 45 Me., 514; *Proprietors v. Laboree*, 2 id., 275; *Medford v. Learned*, 16 Mass., 217; Cooley's Con. Lim., 212; *Bowman v. Middleton*, 1 Bay (S. C.), 252; *Wilkinson v. Leland*, 2 Pet., 627; *Ervine's Appeal*, 16 Pa. St., 266; *Coosa R. S. Co. v. Barclay*, 30 Ala., 127; *Adams v. Palmer*, 51 Me., 480; *Webster v. Cooper*, 14 How., 503. There could have been no legal obligation upon the owner to pay to the claimants the taxes voluntarily paid by them, and certainly no such obligation upon a grantee of the owner. But even if the supposed moral obligation to pay taxes had been a legal obligation, the claim would, in many cases reached by this act, have been barred by limitation before its passage. The delinquent taxes remaining unpaid when the lands were conveyed to the state were the taxes of 1861 to 1866 inclusive. If these were not merged in tax certificates, and any claim grew out of their nonpayment, action on such claim was barred in six or ten years from the delinquent return by subd. 3, sec. 4222, or subd. 4, sec. 4221, R. S. If these taxes were merged in certificates the date of the latest was May, 1867, and the lien of those was barred in any event in fifteen years, or in May, 1882, about a year before the enactment of ch. 273, Laws of 1883. Sec. 1182, R. S. The taxes levied and assessed since the sale by the state, are those of 1872 to 1882 inclusive. The presumption is that these were paid before time for sale; and hence, before the passage of ch. 273, Laws of 1883, all claim to recover those for the years 1872 to 1875 was barred under subd. 3, sec. 4222, R. S. The cause of action could not be revived by the legislature. *Pleasants v. Rohrer*, 17 Wis., 577; *Sprecher v. Wakeley*, 11 id., 432; *Hill v. Kricke*, id., 442; *Lindsay v. Fay*, 28 id., 181; *Davis v. Menasha*, 21 id., 491; Cooley's Con. Lim., 454; *Holden v. James*, 11 Mass., 396; *Davis v. Minor*, 1 How. (Miss.), 183; *M'Kinney v. Springer*, 8 Blackf., 506; *Stipp v. Brown*, 2

Ind., 647; *Dash v. Van Kleeck*, 7 Johns., 477; *Davis v. O'Ferrall*, 4 Greene (Iowa), 168; Smith's Comm., 374–381; *Lyman v. Mower*, 2 Vt., 517; *Kendall v. Dodge*, 3 id., 360; *Bagg's Appeal*, 43 Pa. St., 512.

For the respondent there was also a brief signed by *Charles F. Crosby*, for *James & Crosby*.

TAYLOR, J. The learned counsel for the respondent attack the validity of the law above quoted [ch. 278, Laws of 1883] —*first*, as a violation of the rule of equality and as class legislation, in that it applies a different rule to actions brought by the owners of the particular lands mentioned in said chapter than is applied to the owners of other lands within the state; and, *second*, as a violation of sec. 9 of article I of the constitution of this state, and also of sec. 1 of the XIVth amendment to the constitution of the United States, which provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Upon these questions the learned counsel for the respondent has submitted a very learned and able argument; but, after a careful consideration of the subject, we are not convinced that the law is a violation of any of the constitutional provisions above stated, or of any fundamental rule of right, so far as the law acts prospectively. The object of the statute is, undoubtedly, to protect those who claim a certain class of lands by patent from the state, and who, upon the faith of such patent, may have paid the taxes assessed thereon by the state while the same was held under such patent, against the claim of any other persons whose title is claimed to be better and paramount to the title under the state patent, and who have, in the mean time, failed to pay the taxes lawfully assessed thereon. The purpose of the statute is admitted to be a proper object of legislative action, and it is in itself a just and equitable statute,

when applied prospectively; but it is claimed to be unjust, and beyond the power of the legislature, when attempted to be applied retrospectively.

It is argued that the legislation is class legislation, because it applies to only one tract of land, which was conveyed, or attempted to be conveyed, to the state by the county of Marathon. Upon its face the act is not so limited, but applies to all lands which may at any time have been conveyed by any county to the state, and by the state sold to any private person or persons. Whether there are in fact any other lands which come within the provisions of the act, except those conveyed by Marathon county, we are unable to say; but it is quite evident that the act covers all lands which have been heretofore so conveyed. The right of the legislature to protect those claiming lands under conveyance from the state, by statutes of limitation peculiar to the class of lands so conveyed, has never been disputed. The whole system of our laws fixing short acts of limitation, both in favor of and against the persons claiming under tax deeds, is based upon this right. The conveyance of lands referred to in the act of 1883, by any county to the state, and by the state to private persons, was, as the court may take judicial notice, for the purpose of collecting the taxes due the state which had been assessed upon the same. It was an attempt on the part of the state and county to collect the taxes lawfully assessed upon said lands, and which the original owners had unjustly neglected and refused to pay. The patent from the state is in fact in the nature of a tax deed, and any act which might be passed for the protection of a person claiming under a tax deed, might with equal propriety be passed for the protection of those claiming under the patent from the state. The legislature of the state has repeatedly passed acts to protect claimants under tax deeds, which were local in their character, having reference only to lands in particular cities and villages. In many cases where

the city authorities were authorized to sell and convey lands
for the nonpayment of city or village taxes, special acts of
limitation for particular cities or villages were enacted, and
have been always upheld as a proper exercise of the legisla-
tive power. The fact, therefore, that the right to lands at-
tempted to be patented is limited to lands in a particular
locality, does not in itself render the law objectionable as
being unequal and class legislation. *Smith v. Ford*, 48 Wis.,
161, 162.

That the legislature has the power to compel a party
attempting to avoid the title of a person claiming under a
tax deed simply on the ground of irregularities, and not
upon the ground that the tax is unequal and unjust, to
deposit the amount of the taxes justly due upon the land at
the time of the issuing of the tax deed, as well as those paid
after such issue by the tax title claimant, has been sustained
by this court in the following cases: *Wakeley v. Nicholas*,
16 Wis., 588, 593–4; *Smith v. Smith*, 19 Wis., 615; *Finney
v. Ackerman*, 21 Wis., 268; *Knight v. Barnes*, 25 Wis., 352;
*Dayton v. Relf*, 34 Wis., 86; *Philleo v. Ifiles*, 42 Wis., 527,
531. That this may be required in a strictly legal action, as
well as in an equitable one, was also determined by this
court. *Wakeley v. Nicholas*, 16 Wis., 593, 594. In fact, the
defense which is permitted only upon the deposit of the
taxes which ought to have been paid, by the requirements
of sec. 32, ch. 22, Laws of 1859 (sec. 1200, R. S. 1878), is a
purely legal defense.

We cannot, therefore, hold ch. 278, Laws of 1883, uncon-
stitutional and void, simply because it requires the plaintiff
to deposit the taxes which have been paid on the lands by
the party claiming the same under a patent from the state,
as a condition of his right to maintain his action, without
substantially overruling the decisions of the court above
cited. This court has also held that a plaintiff who brings
an equitable action to avoid a tax deed for mere irregulari-

ties in the tax proceedings, as being a cloud upon his title, must tender or offer to pay the taxes properly due upon the land, on account of which the tax deed was issued. *Hart v. Smith*, 44 Wis., 213, 218, and cases there cited; *Arnold v. Supervisors*, 43 Wis., 627. There can be no doubt as to the power of the legislature to apply this equitable rule established by the courts as a condition to the right of a party to avail himself of his legal right of action to accomplish the same object sought by the equitable action. In fact, the power of the legislature has been exercised to enforce that rule of equity ever since the constitution was adopted, by requiring the payment of such taxes as a condition of the recovery of the possession of the real estate in controversy, after his right has been established in an action at law. See secs. 3087, 3096, R. S. 1878; sec. 32, ch. 141, R. S. 1858; ch. 270, Laws of 1874; *Davis v. Louk*, 30 Wis., 308; *Blodgett v. Hitt*, 29 Wis., 169; *Phœnix L. M. & S. Co. v. Sydnor*, 39 Wis., 600.

So far, then, as the legislature had the power to require the plaintiff in this action to pay the taxes which had been assessed upon the lands in controversy, and which had been paid by the defendant or by those under whom he claims title, as a condition to the plaintiff's right to have possession of the lands delivered to him under the judgment of the court, we are of the opinion that it has the power to make the maintenance of his action depend upon his making a deposit of the money as required by ch. 278, Laws of 1883. We are also of the opinion that the legislature has not the power to impose new burdens upon the original owner which could not have been enforced against him, in some other manner than as required by said ch. 278, under the law as it stood previous to the enactment of said chapter. If there had been no law in existence before the act of 1883 was passed, by virtue of which the plaintiff could have been compelled to pay these taxes before he could

recover the lands in question from the defendant claiming under the tax deed issued to the county of Marathon, then the legislature could not, by its mere fiat, create a cause of action in favor of the tax claimant against the original owner; but if there was such a law in existence, then the requirement of the statute of 1883, that a deposit of the taxes should be made as a condition of the maintenance of his action, was not the creation of a new cause of action or debt against the original owner and in favor of the tax claimant. The new law only goes to the remedy, and not to the right itself. At the time this law was enacted by the legislature, sec. 3096, R. S. 1878, had in substance been in force as a law of this state since 1849 (see sec. 3, ch. 107, R. S. 1849), many years prior to the levy of any of the taxes in controversy in this case, and sec. 3087, R. S. 1878, had been in force since 1874. If it be said that sec. 3, ch. 107, R. S. 1849, and sec. 32, ch. 141, R. S. 1858, were limited to cases where the claimant had been in actual possession of the premises, and had made some improvement thereon, still the justice of the principle of enforcing the payment of taxes paid by the claimant and those under whom he claims, when in possession under a void or imperfect title, is clearly recognized by these laws. The reason for requiring the taxes to be refunded before the original owner would be let into possession after verdict in his favor, was not because the occupant under the imperfect title had in good faith made improvements on the lands to which he claimed title, but because the payment of the taxes was for the benefit of the real owner, and relieved him from the burden of paying the same. And when in the action of ejectment he recovers the lands, and damages for the use and occupation, equity and good conscience require that he should refund to the unfortunate occupier not only the value which has been added to the lands by actual betterments, but also such sums as he had expended in discharging the legitimate taxes as-

sessed thereon, and which were in fact a debt against the real owner of the lands. The difficulty, if there was any, under the old statutes of 1849 and 1858, of compelling the original owner or person having the better title to make compensation in all cases to the defeated party for the taxes paid by him and those under whom he claims, was clearly removed by sec. 3096, R. S. 1878; and it is quite evident from the notes of the revisers that in doing so no substantial change of the law was intended to be made by them, by the language made use of in that section. Under the amendment of the ejectment act made by ch. 270, Laws of 1874, the original owner who recovered in ejectment against a person claiming under a tax deed was subjected to the payment of all taxes paid by the defendant, as well as the taxes upon which the tax deed was based. The whole policy of the legislation of this state has been and still is to require the owner of real estate to refund the taxes to the person who has in good faith paid them for his benefit, either by a purchase of the lands at tax sale, or, if, relying upon the validity of a tax deed upon the lands, he has paid the subsequent taxes before sale, before he shall be permitted to possess himself of the land against such tax claimant. And when any law for that purpose has only a prospective action, no one claims that it is not an equitable and just law.

The only objection we find to the law of 1883 is that it is intended to be and is, by its terms, retrospective, and at the same time it imposes a penalty upon the original owner, by charging him with interest upon the taxes paid for his benefit, at the rate of twenty-five per cent. per annum from the day of payment. Previous to this enactment of 1883 there was no law upon the statute book which required the payment of such interest except to a limited extent under sec. 1200, R. S. 1878, and under ch. 270, Laws of 1874, as amended by ch. 305, Laws of 1880. If a burden of this kind can be imposed upon the owner of real estate by a ret-

roactive statute, then there would be no limit to the power of the legislature, and they might require the payment of such a percentage of interest upon the taxes paid as to work a complete forfeiture of his estate. It needs no argument or citation of authority to show that the legislature has no power to impose such a penalty for the nonpayment of taxes to take effect retrospectively. It is, in fact, an attempt to create a debt against A. in favor of B. by a mere act of legislation.

While we are very clear that the legislature had not the power to compel the original owner to deposit the taxes with twenty-five per cent. interest added, as a condition of his right to maintain his action, we think it had the power to require him to make a deposit of the taxes paid with seven per cent. interest, in analogy to the law which requires the payment of such taxes and interest before execution can be had, after judgment in ejectment, under what is now sec. 3096, R. S. 1878. And, as it is clear the legislature intended to change the rule in actions for the recovery of the class of lands in controversy in this action, we think the statute may well be held valid as to the taxes and seven per cent. interest, and void as to the twenty-five per cent. interest.

We are also of the opinion that the statute which prohibits the issuing of a tax deed upon a certificate of sale for taxes, or the maintenance of any action thereon, after the expiration of six years from the day of sale in certain cases, and after the expiration of fifteen years in all cases, does not relieve the original owner from the payment of the taxes upon which such certificates were issued, if they are owned or held by the claimant under a tax deed, or by any person under whom he claims, before he can have execution upon a recovery in ejectment, under the provisions of sec. 3096, R. S. 1878. The language of the section is broad enough to cover all taxes, no matter when they were paid, and it would seem that there was a clear intent to go back

of all statutes of limitation by providing that, although in ordinary cases the owner can recover the rents and profits for only six years previous to the commencement of the action, yet he shall be allowed to set off against a claim for *taxes paid* and improvements made more than six years before the action was commenced, the rents and profits of the land enjoyed by the defendant previous to such six years. This court, in the cases of *Davis v. Louk*, 30 Wis., 308, and *Pacquette v. Pickness*, 19 Wis., 219, held that the law as to the right to set off rents and profits for the time the defendant occupied previous to the six years, against a claim for taxes and betterments made previous to that date, was, as the statute of 1878 declares it to be, under the provisions of secs. 30–33, ch. 141, R. S. 1858.

As we think the defendant in the action at bar must be considered as holding his title under the county of Marathon, the state, and the intermediate grantees of the state, he would be, in the action of ejectment, under sec. 3096, R. S., entitled to have refunded to him all the taxes paid on the lands by the county, state, and his other grantors, before the plaintiff could have execution, after deducting any judgment the plaintiff might recover for rents and profits, or for damages. So, under ch. 278, Laws of 1883, the court should have ordered the plaintiff to make a deposit of such taxes, with interest at the rate of seven per cent. from the date of payment, as a condition of his maintaining his action, there being nothing in the case tending to show that the taxes assessed and paid were not lawfully assessed and properly chargeable to the lands in controversy. For the reasons above stated we think the order appealed from should be reversed, and that the circuit court should enter an order requiring the plaintiff to make a deposit of the taxes, and legal charges for assessing and collecting the same, and interest at seven per cent., as suggested in this opinion, within such reason-

able time as the court shall fix, as prescribed in sec. 3, ch. 278, Laws of 1883.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.